1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RODAN & FIELDS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, <br><br> Plaintiff, <br> v. <br><br> THE ESTEE LAUDER COMPANIES, INC., a Delaware corporation, and CLINIQUE LABORATORIES, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.: 10-CV-02451-LHK <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION <br><br> (re: docket #8) |

Presently before the Court is Plaintiff Rodan & Fields, LLC's ("Rodan & Fields" or "Plaintiff") motion for a preliminary injunction. Rodan & Fields claims that the trade dress of Defendants The Estee Lauder Companies, Inc. and Clinique Laboratories, LLC ("Defendants") infringes upon its own trade dress in the packaging of skincare products. Defendants have opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument. For the reasons discussed below, Plaintiff's motion for preliminary injunction is DENIED.

1

Case No.: 10-CV-02451-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# I. BACKGROUND

## A. The Rodan & Fields Packaging

Rodan & Fields is a limited liability company that markets "prestige skincare" products developed by Dr. Katie Rodan and Dr. Kathy Fields. Doctors Rodan and Fields are the creators of the "Proactiv Solution" line of acne medications, a top-selling acne solution. First Am. Compl. ("FAC") ¶ 7. In 2002, Rodan & Fields developed a line of products to treat different skin conditions, including sun damage, aging, sensitive skin, and acne. To highlight the "dermatological nature of the brand," Rodan & Fields bundles products together as "regimens" in a rectangular, cardboard bag designed to resemble those used in pharmacies, together with an instructional pamphlet inside the bag. *Id*. at ¶ 8. Each bag features an identical color scheme: primarily a white background for the lower portion, with one of four colors for the contrasting band across the top of the bag. *Id*. Each bag includes the "Rodan & Fields" mark in the contrasting band at the top of the bag and also in the lower white portion of the bag. The top of the bag includes a folded flap, with an opening that acts as a handle. *See* Exh. 1 to Rodan Decl. [dkt. #10]. The bags are "vertically rectangular," with flat bottoms. FAC ¶ 13. Rodan & Fields applied to register its package design with the United States Patent and Trademark Office (USPTO) on April 29, 2010. Pl.'s Mot. for Prelim. Inj. at 5. Defendant submits, in a request for judicial notice, that the USPTO's initial Office Action refused to register Plaintiff's claimed trade dress because its packaging is a "functional design" and "consists of a nondistinctive configuration," and is thus unregisterable. Defs.' Req. for Jud. Notice, Exh. "Office Action" [dkt. #43].[1]

## B. Rodan & Fields History with The Estee Lauder Companies

The Rodan & Fields skincare line launched in July 2002 at the store "Fred Segal" in Santa Monica, California and quickly expanded to other department stores like Nordstrom. FAC ¶ 8. In

---

[1] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the August 17, 2010 initial Office Action by the USPTO refusing Rodan & Fields' application to register the trade dress at issue in this case. Although the Court understands Rodan & Fields' position that the USPTO refusal is not a "final" office action, the USPTO's initial refusal was based on, in part, the functional design and non-distinctive configuration of Rodan & Fields' packaging. Moreover, Rodan & Fields' motion for preliminary injunction cites to its April 29, 2010 application to register its package design with the USTPO in support of granting it relief. *See* Pl.'s Mot. at 5.

2003, Rodan & Fields was acquired by Defendant The Estee Lauder Companies, and operated as a wholly owned subsidiary. *Id*. at ¶ 10. The Estee Lauder Companies' other product lines include Estee Lauder and Clinique. *Id*. The Rodan & Fields brand of skincare products grew into a top seller and expanded to numerous department stores, but, by 2007, the founders of Rodan & Field decided to separate from The Estee Lauder Companies. *Id*. at ¶ 11. In 2007, the founders bought the Rodan & Fields product line and assets back, removed the product line from all department stores, and focused on marketing directly to consumers via a network of independent consultants who would provide one-on-one consultations. *Id*. According to Rodan & Fields' Chairman and Chief Executive Officer, Amnon Rodan, Rodan & Fields has invested over $15 million in developing its business and has over 8,000 independent consultants throughout the United States. Rodan Decl. ¶¶ 10-11. Since buying back its product line, Rodan & Fields has received substantial positive press coverage in numerous news programs and magazines. FAC ¶¶ 17-18.

### C. Clinique's History and introduction of "Dermatological Solutions Kits"

Created in 1968, Defendant Clinique offers consumers skincare products and make-up that have been "dermatologist developed" and "allergy tested." Defs.' Opp'n at 2. The Clinique mark was adopted in 1968, and has been displayed on every product and advertisement since. According to Agnes Landau, Clinique Senior Vice President of Global Marketing, since 2001, Clinique "has been and remains the number one ranked prestige beauty brand sold in finer department stores throughout the United States (e.g., Bloomingdales, Nordstrom, Saks Fifth Avenue) based on both the total number of units sold and dollar sales." Landau Decl. ¶¶ 19-20 [dkt. #41]. In her sworn affidavit, Ms. Landau also declared that Clinique is one of the top beauty and skincare brands in the cosmetics industry, and has substantial brand awareness with customers. *Id*.

Clinique owns a federal registration for a pastel green color infused with white, and its cosmetic product line packaging is traditionally pastel green and silver. Pl.'s Mot. at 6. Although Clinique's products are associated with the pastel green and silver packaging, Clinique has offered "product kits" of various colors schemes and styles since the 1980s, including a four-product kit packaged in a cellophane bag in 1998. Landau Decl. ¶¶ 56-60. In 2009, Clinique introduced its "Dermatologic Solutions" kits, with five different product sets to address redness, acne, radiance,

3
Case No.: 10-CV-02451-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

uneven skin tone, and basic skin care. *Id*. These kits are packaged in transparent cellophane bags, and are color-coded based on product type (e.g., purple for uneven skin tone and aqua for acne). According to Ms. Landau, Clinique's Dermatologic Solutions kits are available in more than 2,000 department stores, and, since being introduced in January 2009, Clinique has shipped more than 600,000 cellophane bags for in-store packaging of the products. *Id*.

## II. LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc*., 129 S. Ct. 365, 374 (2008). The issuance of a preliminary injunction is at the discretion of the district court. *Indep. Living Ctr. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F. 3d 1196, 1201 (9th Cir. 2009).

## III. DISCUSSION

Rodan & Fields bears the burden of establishing that it is likely to succeed on the merits, that it will suffer irreparable harm absent preliminary injunctive relief, that the balance of equities tip in its favor, and that an injunction is in the public interest. Although Rodan & Fields' FAC includes various federal and state claims, its motion for preliminary injunction is premised on trade dress infringement under the Lanham Act, § 43, 15 U.S.C. § 1125. The Court begins, and for all intents and purposes ends, its analysis with Plaintiff's likelihood of success on the merits as to the trade dress infringement claim.

**A. Likelihood of Success on Merits**

To succeed on its trade dress infringement claim under Section 43 of the Lanham Act, Rodan & Fields must prove: 1) that Clinique's trade dress creates a likelihood of consumer confusion; and 2) that Rodan & Fields' trade dress is protectable. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). Trade dress is protectable if it is non-functional and either inherently distinctive or has acquired a secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 883 (1992).

4

### 1. Rodan & Fields has not proven that Clinique's trade dress creates a likelihood of consumer confusion.

The Court agrees with Defendants that beginning with a discussion of a likelihood of confusion is appropriate in light of Plaintiff's motion for preliminary injunction. "The core element of trademark infringement is the likelihood of confusion, *i.e.,* whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). In the Ninth Circuit, the test for trade dress infringement is "whether there is a likelihood of confusion resulting from the total effect of the defendant's package on the eye and mind of an ordinary purchaser." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). A likelihood of confusion may be established by an analysis of eight factors: 1) strength of the mark; 2) the proximity of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) the type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) the likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979). However, "the eight-factor test for likelihood of confusion is pliant," as the relative importance of each factor "will be case-specific." *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

The Court begins with the similarity of the marks or trade dress. *See Brookfield*, 174 F.3d at 1054 ("The similarity of the marks will always be an important factor."). Comparing the Rodan & Fields packaging with the allegedly infringing packaging of Defendant Clinique, the Court finds substantial differences between the two. Both are, of course, bags, but the Court must look to the packaging in its entirety. *Id*. Rodan & Fields' packaging consists of a vertically rectangular white cardboard bag with a flap over the top that acts as a handle. Pl.'s Mot. at 2 (displaying picture of Rodan & Fields packaging). Clinique's packaging consists of a transparent cellophane bag that is open, allowing the consumer to view the products in the bag which are generally packaged in celadon green and silver. Defs.' Opp'n at 1 (displaying picture of Clinique packaging). As to color scheme of the packaging, Rodan & Fields' packages are two-toned, with white in the lower three-quarters, and one of four contrasting color bands in the top quarter. Clinique's bag is transparent, and includes a cardboard insert as background, which is two-toned with white in the

5

lower portion and one of six colors in the top portion. Both parties use color bands to distinguish product lines, but the colors used designate different functions. For example, Rodan & Fields uses a purple contrasting band to mark its regimen for "acne and post-acne marks," while Clinique uses a light blue color band to distinguish its "acne solutions" products. While Rodan & Fields does not use hang tags, Clinique's packages are usually displayed with a hang tag bearing the Clinique mark. Finally, the Rodan & Fields mark is prominently displayed on its packaging, once in the top color band portion of the bag, and again in the lower white portion of the bag. Clinique's mark appears in the lower portion of the cellophane bag, on each of the products visible in the bag, and on the hang tag attached to each bag. The prominence of the trade names on the packaging strongly supports a finding that consumer confusion is unlikely. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992) ("[W]e conclude that, although [the trade dresses of Tylenol PM and Excedrin PM] share many similar elements, the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging."). In sum, the Court concludes that the clear differences among the packaging weigh heavily in favor of Defendants.

Numerous other *Sleekcraft* factors also favor Defendants. Rodan & Fields' unregistered trade dress is weak because it is not inherently distinctive, as it simply consists of a two-toned cardboard bag with a flat bottom, a handle on top, and a color scheme to distinguish among product lines. Rodan & Fields' motion for preliminary injunction points to no evidence of actual confusion.[2] The parties market their products through vastly different channels, as Rodan & Fields relies on a network of more than 8,000 independent consultants and does not sell its products through department stores, whereas Clinique products are sold in Clinique kiosks at department stores and other beauty retailers. In addition, as Rodan & Fields' own CEO, Amnon Rodan

---

[2] In its Reply Brief, Rodan & Fields changes tack, and cites to what it considers evidence of actual confusion (e.g., statements from a former Rodan & Fields Vice President and a Rodan & Fields independent consultant that the packaging is confusingly similar). *See* Rodan & Fields' Reply at 12. Defendants are correct, however, that new facts, evidence, and argument should not be submitted for the first time in a Reply. Accordingly, the Court will disregard evidence submitted for the first time in Rodan & Fields' Reply. It is worth noting, however, that declarations from interested individuals (i.e., a former employee and an independent consultant) are not especially indicative of actual *consumer* confusion.

acknowledges, the goods inside the packaging are "prestige products" and "because the products are relatively expensive, Rodan & Fields customers are primarily women with a certain level of disposable income -- women who care about taking care of their skin and who can afford to spend $160 every two months . . ." *See* Rodan Decl. ¶ 35.  Thus, the degree of care likely to be exercised by customers is high given the sophistication of the consumers in the skincare market and the prestigious, relatively expensive products being sold.  *See, e.g.*, *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 1001 (C.D. Cal. 2002) ("purchasers of fragrances and skincare products are tend to exercise a high degree of care and brand consciousness").

Two other relevant *Sleekcraft* factors are the proximity or relatedness of the goods and defendant's intent in selecting the trade dress.  The Court agrees with Rodan & Fields that the parties' products are related.  Both sell skincare products designed to address similar types of skin conditions.  *See Sleekcraft*, 599 F.2d at 348 n.10 (related goods are "those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark").

The Court, however, does not agree that Rodan & Fields has shown evidence of actual intent to infringe on the part of Defendants.  Rodan & Fields' primary evidence is what it refers to as the "strikingly similar" packaging at issue in this case.  As noted above, far from being "strikingly similar," the parties' bags are substantially different in terms of overall appearance.  Rodan & Fields also points to a "dramatic departure" from Clinique's traditional pastel green and silver packaging.  Yet, Clinique products, with their traditional green and silver, are still visible through the transparent cellophane bags.  Moreover, Defendants have submitted sworn declarations that Clinique has packaged its products in various bags that are not green and silver since the 1980's, including in a transparent, cellophane bag as early as 1998.  *See, e.g.*, Landau Decl. ¶ 59.  The argument that Defendants "knew" of Rodan & Fields packaging because of their previous ownership of Rodan & Fields is insufficient to show intent, especially because Clinique's packaging is so different from Rodan & Fields' packaging.

In sum, Rodan & Fields has not proven that Clinique's trade dress creates a likelihood of consumer confusion, and has thus failed to show a likelihood of success on the merits.

7

**2. Rodan & Fields has not proven that its trade dress is protectable.**

Although Rodan & Fields' failure to show a likelihood of consumer confusion is sufficient to deny it preliminary injunctive relief, the Court also finds that Rodan & Fields has not proven that its trade dress is protectable. Under 15 U.S.C. § 1115(a), registration of a trade dress is *prima facie* evidence of validity and entitles the owner to a presumption of protectable rights. Because Rodan & Fields' trade dress is not registered, it must show: 1) that its trade dress is non-functional and; 2) that it is either inherently distinctive or has acquired secondary meaning. *Two Pesos*, 505 U.S. at 773. In brief, Rodan & Fields has failed to satisfy its burden on both accounts.

A trade dress is functional if it "is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). In evaluating functionality, the Court focuses not on the individual elements of the trade dress, but rather on "the overall visual impression" that the trade dress creates. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). On this record, the Court finds that Rodan & Fields' trade dress appears functional.[3] Rodan & Fields' packaging consists of a vertically rectangular cardboard bag, with a flat bottom, a handle at the top, and a two-toned color scheme. The use of a bag with a flat bottom makes the bag capable of standing upright on shelves, while the handle at top allows the bag to hang on a display case and be carried by consumers. Although it is possible for a color or a color scheme to create a non-functional mark, Defendants provide numerous examples of the functional use of color coding to distinguish products (as opposed to identifying brands) in many industries, including the cosmetics industry. *See* Defs.' Opp'n at 18. Competitors of Rodan & Fields, including Clinique, would be at a significant disadvantage if they could not continue to package their products in vertically rectangular bags with set color schemes to distinguish among products. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382 (use of color on background of package usually rejected as having "no trademark significance").

---

[3] Similarly, the USPTO's initial Office Action found Rodan & Fields' trade dress to be functional.

8

Case No.: 10-CV-02451-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1      Rodan & Fields has also not satisfied the second requirement for protection of an

2 unregistered trade dress, e.g., showing that the trade dress is inherently distinctive or has acquired

3 secondary meaning. The Court does not find Rodan & Fields' vertically rectangular bar with a

4 two-toned color scheme (white and one of four other colors) inherently distinctive. It is possible

5 that Rodan & Fields' packaging has acquired a secondary meaning through its continuous use in

6 connection with skincare products since 2002, and through Rodan & Fields' numerous

7 advertisements and promotional materials. *See Vision Sports*, 888 F.2d at 615 (relevant factors in

8 determining secondary meaning include actual purchaser's association of trade dress with company

9 products, degree and manner of use of trade dress, and whether use of the trade dress has been

10 exclusive). On this record, however, the Court finds that Rodan & Field has made an insufficient

11 showing that consumers actually associate the packaging (the white cardboard bag with a color

12 band at the top) solely with Rodan & Fields. *See Clicks Billiards*, 251 F.3d at 1264 (without a

13 source-identifying role, a product cannot be given exclusive rights under trade dress law).

14      **B. Irreparable Harm**

15      Where a trademark plaintiff demonstrates that it is likely to succeed on the merits, a district

16 court has discretion to presume irreparable harm. *See Marlyn Nutraceuticals, Inc. v. Mucos GmbH

17 & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). Here, however, Rodan & Fields has not demonstrated

18 that it is likely to succeed on the merits, and therefore Rodan & Fields is not entitled to a

19 presumption of irreparable harm. As to actual harm, Rodan & Fields claims: 1) its "reputation is at

20 risk" because confused consumers may associate potentially inferior Clinique products with Rodan

21 & Fields based on the "infringing trade dress;" 2) confused consumers may view Clinique products

22 as a less expensive version of Rodan & Fields products and so Rodan& Fields may lose sales; and

23 3) some confused customers may come to associate Clinique with Rodan & Fields, which will

24 diminish the strength of the Rodan & Fields brand. *See* Pl.'s Mot. at 20-21. These allegations of

25 potential harm, without any supporting evidence in the record, are insufficient. *See Winter*, 129 S.

26 Ct. at 374 (a plaintiff seeking preliminary injunctive relief must show that it is *likely* to suffer

27 irreparable harm in the absence of preliminary relief). Moreover, these allegations are belied by

28 the declaration of Rodan & Fields' own CEO that, as of June 2010 (a year and a half after the

introduction of the Clinique Dermatologic Solutions kits), sales doubled from 2008 to 2009, and are expected to double again in 2010.  Rodan Decl. ¶¶ 25-26.

### C. Balance of Equities and Public Interest

In light of the Court's findings that Rodan & Fields has not established a likelihood of success on the merits and has not shown that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief, the Court finds that the balance of equities and the public interest do not tip in favor of granting a preliminary injunction.  In balancing the equities, it is not clear that Rodan & Fields is suffering any injury since its trade dress is not confusingly similar to Clinique's trade dress.  On the other side of the equation, Clinique would not have to stop selling its products, but it would have to re-package them at some cost.  On balance then, the equities do not favor Rodan & Fields.

In the trademark context, the public interest is often defined as the right of the public not to be deceived or confused.  *See Opticians Ass'n of America v. Indep. Opticians of America, Inc.*, 920 F.2d 187, 198 (9th Cir. 1990).  As Rodan & Fields has not proven that Clinique's trade dress is confusingly similar to its own trade dress, the Court finds that the public interest weighs in favor of Defendants, and thus against the issuance of preliminary injunctive relief.

### IV. CONCLUSION

Accordingly, Plaintiff's motion for preliminary injunction is DENIED.  The motion hearing currently scheduled for October 7, 2010 is VACATED.  The Case Management Conference scheduled for October 7, 2010 at 1:30 p.m. remains as set.

**IT IS SO ORDERED.**

Dated: October 5, 2010

_____
LUCY H. KOH
United States District Judge